UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| PATRICIA B.<sup>1</sup>, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 4:20cv54 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income (SSI) under Title XVI of the Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law

Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2. The claimant has not engaged in substantial gainful activity since May 15, 2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; patellar spurring of the knee; cervical radiculopathy; very mild left median neuropathy; mild neuropathy; asthma; obesity; bipolar disorder; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger with the bilateral upper extremities. The claimant can have occasional exposure to extreme cold and heat; wetness; humidity; and pulmonary irritants. The claimant can understand, remember, and carry out simple instructions and make simple work-related decisions. The claimant can tolerate occasional interaction with coworkers, supervisors, and the public.

6. The claimant is capable of performing past relevant work as a wire cutter (DOT #731.687-038, SVP of 1, light per DOT, medium as performed). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(R. 22-29)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits.

The ALJ's decision became the final agency decision when the Appeals Council denied review.

3

This appeal followed.

Plaintiff filed her opening brief on March 16, 2021. On April 27, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on May 25, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 4 was the determinative inquiry.

Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income on August 4, 2018. (R. 270-280) The application listed a disability onset date of May 15, 2018. (R. 275) At the time of application, the Plaintiff was fifty-four (54) years old and is presently fifty-seven (57) years old. (R. 275) In the initial disability report, Plaintiff listed the physical or

mental conditions that limited her ability to work as degenerative disc conditions in her back, back and hip pain through left leg, degenerative conditions of the neck, neck pain, bipolar depression, PTSD, anxiety, depression, sit, stand and walk limitations, lifting limitations, and pain and fatigue throughout the day. (R. 299)

Plaintiff reported a high school education and a lengthy work record as a welder from 1996 through 2014 and then a shorter-term labor positions through various temporary agencies. (R. 300) The field office disability report indicates a prior application for benefits that was denied at the reconsideration level of appeal on August 6, 2014.

Plaintiff completed a "Function Report-Adult" on August 27, 2018. (R. 322-329) Plaintiff responded to the questionnaire that her illnesses and injuries impacted lifting, walking, stair climbing, squatting, sitting, bending, standing and reaching and using hands. (R. 327) Plaintiff reported that she could walk about fifty (50) feet and then would have to rest twenty (20) minutes before resumption of walking. She reported being left-handed. (*Id.*) Plaintiff indicated that she had difficulty getting her right leg over in and out of the bathtub. (R. 323) Plaintiff indicated she had difficulty bending over, that she could not sit, and that she required assistance from her husband in putting on pants, socks, and shoes. (R. 329) Plaintiff reported that standing was very painful and that bending of her legs pulled on her lower back. (R. 329) She had pain while walking that took her breath away. (*Id.*) Plaintiff explained that she limited meal preparation to the microwave because she could not stand for the time it took to cook other food. (R. 324) Plaintiff noted her slowness in performance of basic housework tasks. (*Id.*)

With regard to her mental illness, Plaintiff reported she had difficulty with memory, completing tasks, concentration, understanding, following instructions, and getting along with

5

others. (R. 327) Plaintiff stated that she almost never went outside, unless going to the store, as she needed to avoid crowds. She could only tolerate shopping on one or two days a month. (R. 325) She also reported that the bipolar disorder impacted her sleep. (R. 323) Plaintiff reported difficulty with attention and concentration stating that her "mind hits too many things to understand." (R. 327) Plaintiff responded that she did not finish things started (conversation, chores, reading, watching a movie) and that she had to read written instructions over and over. Plaintiff stated that she gets confused on spoken instructions. (*Id*.) Plaintiff shared that she did not attend social events with many people as she felt "scared and inferior." (*Id*.) Plaintiff reported that forgot what she was talking about mid-sentence. (R. 328)

In support of remand, Plaintiff argues that the RFC is not supported by substantial evidence because her degenerative disc disease, arthritis in both knees, and neuropathy combined with obesity simply cause too much pain for her to be on her feet for long. The RFC is "an administrative assessment of what work-related activities an individual can perform despite her limitations," and in evaluating the claimant's RFC, the ALJ must consider both the medical and non-medical evidence of record. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001), citing SSR 96-8p; 20 C.F.R. § 404.1545(a). The RFC is an assessment of an individual's ability to perform sustained work related physical and mental activities in a work setting on a regular and continuing basis which means eight hours a day, five days per week or an equivalent work schedule. SSR 96-8p.

Plaintiff argues that her back pain and neuropathy does not allow her to stand and walk. Plaintiff contends that the medical record supports her allegations of chronic back pain, degenerative disc disease of the cervical and lumbar spine, cervical radiculopathy and neuropathy.

6

An MRI performed on March 17, 2015 showed diffuse facet sclerosis of the mid and lower cervical spine. (R. 658) An EMG was performed October 27, 2016 due to a referral for bilateral arm parathesias and left arm weakness and reports of chronic right three fingers numbness and tingling for several years. (R. 659) Exam noted weak hand grip on both sides and a history of radiating neck pain. (R. 660) The study was abnormal showing left mild to moderate inactive cervical radiculopathy at C7, C8, T1, C5, C6, diffuse cervical radiculopathy, and very mild chronic inactive neuropathy at the wrist. Numbness and tingling in the hands was noted in the July 2017 office visit. (R. 564) Radiology done on October 18, 2018 showed a Grade 1 anteriolisthesis at the C5/C6 level and spondylitic changes seen at multiple levels. (R. 467-470)

Plaintiff had another EMG on December 1, 2016 to address her low back pain with numbness in both lower extremities. The testing indicated mild neuropathy. (R. 662) Dr. Griffith suggested an MRI due to an increased lumbosacral angle pointing to an area of local pain. (*Id*.) The primary care provider, Dr. Juliana Gaeta, ordered radiology in October 2018 due to the history of chronic bilateral low back pain and bilateral sciatica. The radiology impression was a grade 1 anterolisthesis at the L5/S1 level with degenerative changes (R. 461-465). Plaintiff's lumbar MRI that month showed disc desiccation at L5-S1 with no stenosis (R. 572-573).

In addition, Plaintiff had knee pain and swelling in her legs. In November 2018, Plaintiff's knee x-rays showed mild medial and patellar spurring and moderate bilateral patellar effusions with the left greater than the right (R. 495). Plaintiff saw Dr. Gaeta, in December 2018, for left leg swelling and chronic pain in the left knee. (R. 521-527) Further, the acute midline low back pain with left sided sciatica was assessed.

Plaintiff argues that the ALJ provided little discussion regarding how much pain and

7

debility these conditions caused Plaintiff. Plaintiff testified that she could only stand for ten minutes at a time. (R. 52) After standing she would have to rest for eight to ten minutes before the pain subsided. (*Id.*) She testified that her left knee swelled and that she could not put pressure on it. She testified that she treated with cortisone shots in her knee. Plaintiff testified that could walk no more than half a block due to the knee and back pain. (R. 53) Plaintiff argues that the ALJ failed to account for Plaintiff's pain and symptoms and as directed by 20 CFR 404.1529(c) and 416.929(c).

However, as the Commissioner points out, the record shows that the ALJ reasonably articulated and considered the evidence as it applied to the factors set forth in the regulations and SSR 16-3p (R. 25-28). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record (R. 27). The ALJ discussed a host of factors when assessing Plaintiff's subjective complaints.

The ALJ first summarized Plaintiff's statements concerning her symptoms and functional limitations (R. 25-26). As the ALJ noted, from a physical perspective, Plaintiff reported that her conditions affect her ability to sit or stand too long; she had issues gripping objects; walking was an issue because of swelling in her left knee; she could stand for 10 minutes before needing to sit for 8-10 minutes; she could lift around 8 pounds; and she used an inhaler for her asthma (R. 25-26, 52-54).

The ALJ next discussed the objective medical evidence, including evidence that pre-dates Plaintiff's alleged disability onset date. For example, the ALJ considered an October 2016 EMG of

8

Plaintiff's upper extremities that showed mild-to-moderate cervical radiculopathy and very mild left median neuropathy at the wrist (R. 26, 659-61). Additionally, a December 2016 EMG of Plaintiff's lower extremities showed mild neuropathy (R. 26, 662-63).

In July 2018, Plaintiff reported having back pain, but her primary care physician, Juliana Gaeta, M.D., found that Plaintiff had normal range of motion and no edema or musculoskeletal tenderness (R. 26, 539-44). Dr. Gaeta referred Plaintiff to physical therapy and prescribed medication (R. 26, 542-43).

On October 15, 2018, Plaintiff reported that she could not squat and had right-sided weakness (R. 26, 533). Dr. Gaeta found that Plaintiff had decreased range of motion in her lumbar spine (R. 26, 536). X-rays of the cervical and lumbar spine showed grade 1 anterolisthesis with degenerative changes (R. 26, 461, 466). A lumbar spine MRI showed disc desiccation at L5-S1 with no stenosis (R. 26, 572-73).

During a consultative examination on October 18, 2018, Luella Bangura, M.D., found that Plaintiff had wheezing sounds, but she otherwise had normal lung sounds (R. 26, 473). Plaintiff reporting having lifting limitations, but she stated that her medication helped (R. 26, 472-75). Dr. Bangura noted that Plaintiff had an antalgic gait with a positive straight leg raise and only slightly decreased strength of 4/5 in her legs (R. 26, 473). Dr. Bangura also noted that Plaintiff's sensation was intact; she had normal grip strength and hand functions; and she could get on and off the table without difficulty (R. 26, 473-74).

Plaintiff returned to Dr. Gaeta in November 2018 complaining of some trouble breathing and edema in her knees (R. 26, 528-32). Dr. Gaeta recommended an echocardiogram (R. 26, 528-32). A pulmonary function test showed FEV1 levels of 1.88 to 2.15 before medication (Tr.

9

26, 501). Knee x-rays showed mild medial and patellar spurring (R. 26, 493-94).

Plaintiff contends that the ALJ "minimize[s]" and "did not properly address the pain or its treatment". As support, Plaintiff cites to prescriptions for hydrocodone and a muscle relaxant. The ALJ, however, appropriately considered this evidence when evaluating Plaintiff's prescribed medication regimen and other treatment. 20 C.F.R. §§ 404.1529(c)(3)(iv), (v), 416.929(c)(3)(iv), (v) (an adjudicator considers, among other things, the effectiveness of medication and other treatment in alleviating symptoms). As the ALJ noted, in December 2018, Dr. Gaeta referred Plaintiff to an orthopedic surgeon for her left knee complaints, and she also prescribed Flexeril for back pain (R. 26, 521-26). In January 2019, Dr. Gaeta refilled Plaintiff's medication (R. 26, 644-49). And in February 2019, Plaintiff requested an injection for her left knee and hydrocodone for her back pain (R. 26, 639-44). The ALJ appropriately took this evidence into consideration when evaluating Plaintiff's symptoms.

Additionally, the ALJ explained that the Plaintiff has had only conservative care for her impairments with fairly normal clinical findings (R. 27, 473-75, 521-44, 582-83, 639-49). The record shows that Plaintiff had evidence of only mild neuropathy of her lower extremities, and her upper extremity EMG showed very mild left median neuropathy (R. 27, 750-51, 753-55). The ALJ found that the record contained no specific hand limitations, and in fact, records show normal hand function (R. 27, 474). The ALJ, therefore, appropriately considered evidence concerning Plaintiff's treatment for her reported pain. *Stephens v. Colvin*, 1:15-cv-43-JVB, 2016 WL 5389292, at *5 (N.D. Ind. Sept. 27, 2016) ("[p]laintiff may disagree with the ALJ's decision not to include a specific limitation . . . [t]hat does not mean, however, that the ALJ failed to account for Plaintiff's limitations, nor does it mean her RFC determination is unsupported by substantial

10

evidence").

The ALJ also considered Plaintiff's daily activities when evaluating her symptoms (R. 27). *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (identifying the claimant's daily activities as one factor an adjudicator considers when evaluating subjective complaints). As the ALJ stated, the record shows that Plaintiff did chores, including vacuuming and mopping, after which she rested; she cooked simple meals; she went to the store once a month; and spent time in the mornings with her neighbor (R. 26-27, 322-30). In October 2018, Plaintiff reported that she helped her elderly neighbor (R. 27, 486). The ALJ reasonably considered Plaintiff's activities of daily living as one factor in the overall assessment of her functioning.

Plaintiff argues that the ALJ erred because she "asked nothing about the pain, treatment for pain, or activities of daily living at the hearing". However, as the Commissioner notes, Plaintiff was represented by counsel at the hearing, and her counsel had an opportunity to question Plaintiff at length about her symptoms, treatment, and her daily activities (R. 53-65). Moreover, the Decision demonstrates that the ALJ considered the records and testimony concerning these factors (R. 26-28). The ALJ did not find that Plaintiff's subjective complaints were completely incredible or that she had no limitations (Tr. 25). As the ALJ explained:

- Plaintiff is limited to the lifting of light work because of back and neck pain with heavier lifting (Tr. 28, 53-54, 327, 472-75);

- Plaintiff has postural limitations because of increased back, neck, and knee pain with certain activities as well as diminished mobility related to her weight (Tr. 28, 472-75);

- Plaintiff has manipulative restrictions because of trouble holding and gripping objects due to the neuropathy and cervical radiculopathy (Tr. 28, 52, 58, 472-75, 659-61);

11

- Plaintiff has hazard limitations because of neuropathy in her feet, which can cause potential gait issues (Tr. 28, 472-75, 644-49); and

- Plaintiff has environmental restrictions because of difficulty breathing in certain conditions (Tr. 28, 54, 59, 472-75).

The ALJ's RFC finding is generally consistent with the opinions of the State agency physicians, who considered Plaintiff's records at the initial and reconsideration levels of administrative review and determined that Plaintiff retained the ability to perform a reduced range of light work with other enumerated postural and environmental limitations (R. 28, 121-23, 155-58). The ALJ found their opinions to be generally persuasive, as they are generally consistent with and supported by the record (Tr. 28).[2] Ultimately, the ALJ found that further functional limitations were unwarranted (Tr. 25-28).

After considering the record as discussed above, this Court finds that the ALJ's physical RFC assessment is supported by substantial evidence and, thus, there is no basis for remand on this issue.

Next, Plaintiff argues that the ALJ erred in evaluating her mental RFC. The ALJ found that Plaintiff's bipolar disorder and PTSD were severe impairments at step two of the sequential evaluation process (R. 23). At step three, the ALJ analyzed the broad areas of mental functioning in Listings 12.04 and 12.15 and found, among other things, that Plaintiff had a moderate limitation

---

[2] Because Plaintiff's application was filed after March 27, 2017 (*see* R. 20), the revised regulations for evaluating medical evidence apply. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017), as amended, 82 Fed. Reg. 15132 (Mar. 27, 2017). Under the new regulations, an ALJ is not required to defer to, or give controlling weight to, any particular type of medical opinion (R. 28). *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ considers primarily the supportability and consistency of a medical opinion when evaluating its persuasiveness. *See id.*

in concentration, persistence or maintaining pace (R. 24). The ALJ then went on to evaluate Plaintiff's mental functioning in the RFC finding (R. 25). Ultimately, the ALJ determined that, from a mental perspective, Plaintiff could understand, remember, and carry out simple instructions and make simple work-related decisions; she could tolerate occasional changes in a work setting; and she could tolerate occasional interaction with coworkers, supervisors, and the public (R. 25).

Plaintiff contends that the ALJ's assessed RFC finding does not "resolve the issues of moderate limitations on concentration, persistence and pace". Thus, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence and the vocational evidence is unreliable.

In assessing the RFC, the ALJ acknowledged Plaintiff's reported difficulties with focus and concentration (R. 26-27, 57, 327). The ALJ also considered Plaintiff's mental health treatment. For example, records show that in July 2018, Plaintiff reported having manic behavior and requested a prescription for bipolar disorder (R. 539). On examination, Dr. Gaeta found that Plaintiff was fully oriented, she had a normal mood and affect, her behavior was normal, and her judgment and thought content were normal (R. 541-42). Dr. Gaeta prescribed Abilify and referred Plaintiff to behavioral health (R. 26, 542).

Plaintiff began treatment with Jacqueline C. Leader, LCSW, at Franciscan Behavioral Health, in September 2018 (R. 488). Ms. Leader noted that Plaintiff was attentive/cooperative with good eye contact (R. 26, 490). Ms. Leader found that Plaintiff had moderate symptoms, and she recommended therapy (R. 26, 491).

In mid-October 2018, Plaintiff told Dr. Gaeta that she had started using her depression medication more (R. 27, 533). Dr. Gaeta found that Plaintiff had a normal mood and affect, her behavior was normal, and her judgment and thought content were normal (R. 27, 536). Dr. Gaeta

13

adjusted Plaintiff's medication (R. 27, 537).

Three days later, Plaintiff attended a consultative psychological examination with Caryn Brown, Psy.D. (R. 27, 476). Dr. Brown found Plaintiff to be fully oriented and cooperative, with a euthymic mood, and she was able to recall two of three words after five minutes (R. 27, 477-78). Dr. Brown indicated that Plaintiff had no impairment in her ability to sustain her concentration and attention (R. 27, 477-78).

At a therapy session October 2018, Plaintiff told Ms. Leader that she tended to isolate from others, but she had made progress with not yelling at people (R. 27, 486). Later that month, Plaintiff reported that she had made improvements with her anger (R. 27, 486).

In December 2018, Dr. Gaeta again noted that Plaintiff had a normal mood and affect, her behavior was normal, and her judgment and thought content were normal (R. 525). However, Dr. Gaeta recommended that Plaintiff increase the Abilify (R. 27, 525). The following month, Plaintiff indicated that the increased medication helped her mood (R. 27, 644).

In July 2019, Plaintiff reported that she had stopped taking her medications, but she wanted to go back on them (R. 27, 690-91). She indicated that she did not like being around people (R. 27, 690). Plaintiff received inpatient treatment from September 24 to October 1, 2019, after complaining of suicidal ideations (R. 27, 668). The doctor noted that Plaintiff seemed to be calm and cooperative, even on her initial admission (R. 27, 674). Records show that Plaintiff's mood and affect improved with therapy and medication management (R. 27, 682). At discharge, Plaintiff was cooperative, though her mood was depressed and anxious; her thought content was normal; she was fully oriented; her attention and concentration were within normal limits; and her recent and remote memory were within normal limits (R. 682).

When assessing Plaintiff's RFC, the ALJ also considered the opinions of the State agency psychological consultants, Drs. Shipley and Neville, who opined, in October 2018 and February 2019 respectively, that Plaintiff's psychological conditions did not severely limit her ability to perform a work routine (R. 28, 119-20, 153-55). By definition, a "non-severe" mental impairment does not significantly limit the ability to understand, remember, or carry out "simple instructions;" to use judgment; to respond appropriately to "usual work situations;" or to deal with changes in a "routine work setting." 20 C.F.R. §§ 404.1522(b), 416.922(b) (examples of "basic work activities"). Based on her review of the record in its entirety, the ALJ disagreed with the conclusion that Plaintiff did not have a severe mental impairment (R. 23, 28). Ultimately, the ALJ found that Plaintiff was more limited than opined by Drs. Shipley and Neville. (R. 25).

The ALJ explained that Plaintiff was limited to simple instructions because of trouble concentrating and issues with detailed instructions due to bipolar disorder and PTSD (R. 28, 57, 59, 327). The ALJ's RFC finding appropriately limited the complexity of the work Plaintiff would be asked to perform (*i.e.*, work involving simple instructions and simple work-related decisions) and that she could tolerate occasional changes in work settings (R. 25). The ALJ also assessed social limitations because of Plaintiff's reported anxiety around crowds as well as a tendency to lash out at others related to her bipolar disorder and PTSD (R. 28, 55, 58, 61, 327, 476-79, 486, 690-95).

Plaintiff seems to argue that a limitation to simple, routine, repetitive tasks is always insufficient to encompass limitations in concentrating, persisting, or maintaining pace. However, the Seventh Circuit's decisions addressing alleged errors in the ALJ's RFC assessment in the context of a moderate rating in concentration, persistence, or pace show that there is no such

15

categorical rule. As the Commissioner points out, in recent cases the Seventh Circuit has affirmed RFC assessments that limit the claimant to simple, routine tasks when the evidence supports it. *Pavlicek v. Saul*, No. 20-1809, — F.3d —, 2021 WL 1291614, at *5 (7th Cir. Apr. 7, 2021) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding substantial evidence supported the ALJ's conclusion that the restrictions in the hypothetical question adequately addressed Pavlicek's "moderate" limitations in concentration, persistence, and pace, where this assessment included the same restrictions as in the State agency medical consultants' opinion); *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *Morrison v. Saul*, 806 F. App'x 469, 473–74 (7th Cir. 2020); *Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020); *Urbanek v. Saul*, 796 F. App'x 910, 913–14 (7th Cir. 2019). Thus, when supported by the record evidence (as here), the Seventh Circuit has upheld similar limitations as consistent with a moderate rating in the area of concentrating, persisting, or maintaining pace.

In this case, the ALJ adequately grounded Plaintiff's mental RFC in the medical evidence and other evidence of record. The ALJ presented appropriate hypothetical question based on the RFC to the vocational expert (R. 65-67). The vocational expert testified that based on the RFC, Plaintiff would not be precluded from performing her past relevant work as a wire cutter as that job is generally performed according to the DOT (*i.e.*, light in exertion and unskilled in nature) (R. 66). The ALJ relied on the vocational expert's testimony at step four of the sequential evaluation process to find Plaintiff was not disabled (R. 29). The ALJ's findings are supported by substantial evidence and, thus, will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: May 28, 2021.

s/ William C.  Lee
William C. Lee, Judge
United States District Court
